UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

JAN 2 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES OF AMERICA,   )
                            )
                            )
            v.              )   Criminal Action No. 04-535 (RWR)
                            )
MARCUS JERMAINE PINCKNEY,   )
                            )
        Defendant.          )
                            )

## MEMORANDUM OPINION AND ORDER

The government has moved for reconsideration of my oral
order at the hearing on August 25, 2006 suppressing a handgun,
cocaine base, and money seized by police from defendant Marcus
Pinckney.  It seeks to reopen the suppression hearing record to
introduce the transcript of the preliminary hearing testimony of
the arresting officer to establish the absence of a Fourth
Amendment violation.  Because the proffered transcript would not
alter the result of the suppression hearing, the government's
motion will be denied.

### BACKGROUND

Only one witness, Metropolitan Police Department ("MPD")
Officer Arthur Hopper, was called concerning this event at the
suppression hearing.  The evidence at the hearing established
that on the night of November 28, 2003, MPD Officer Brian Wymbs[1]

---

[1]     Wymbs' only court testimony in the case to date
occurred at the December 8, 2003 preliminary hearing.  It is the

- 2 -

saw two black men seated in a car that had been reported stolen.
The men appeared to be merely sitting in the car and not engaging
in any drug or illegal transactions.  One of the men wore a
"hoodie."  When Wymbs circled back to the block where the car was
parked, the car was unoccupied and two black men were walking on
the side of the street opposite the car.  One was Pinckney who
wore a dark jacket.  Despite heavy rain falling, both had
relatively dry clothing.  Wymbs had not seen Pinckney walk away
from the car or across the street.  Wymbs arrested Pinckney for
unauthorized use of a vehicle ("UUV"), placed him in handcuffs
without patting him down, and radioed for a police transport to
take Pinckney to the Fifth District police station.

    Hopper answered the call and arrived within minutes.  As the
transporting officer, before placing Pinckney in the transport
vehicle, Hopper conducted what he called a protective pat down of
Pinckney for officer safety.  First, he felt a bulge in
Pinckney's jacket pocket.  Hopper did not know what it was and
speculated that it could have been anything, but he did not
readily identify the bulge as a weapon or narcotics.[2]  He reached

transcript of that testimony that the government now seeks to
introduce.

    [2]    The government's motion repeatedly mischaracterizes
Hopper's testimony, claiming he felt hard objects that he
suspected to be crack cocaine.  (See Gov't Mot. to Recons. at 5,

into Pinckney's jacket pocket, removed a brown paper bag, looked
into it and found ziplocks of crack cocaine.  Thereafter, he
patted Pinckney's waist area and found a Glock firearm in the
waistband of his pants.  Hopper also found a quantity of U.S.
currency.[3]  Wymbs chose to charge Pinckney with possession of the
weapon and drugs but not with UUV because Wymbs did not have
enough evidence to show that it was Pinckney who had been inside
the stolen car.

The government's principal argument was that the evidence
was retrieved during a search incident to a lawful arrest.  I
found that while the facts may have justified detaining Pinckney
under Terry v. Ohio, 392 U.S. 1 (1968), to confirm or dispel any
suspicion that Pinckney was someone who had been inside the
stolen car, the facts did not amount to probable cause for an
arrest and a full search incident to an arrest.  I therefore
granted Pinckney's motion to suppress the crack cocaine, the
weapon and the money.

13, 18.)

[3]    The hearing record does not reflect from where or at
what time in the sequence of the pat down the money was retrieved
or how much money it was.  The government's motion alleges that
$295.86 was found in Pinckney's left front pants pocket.  (Gov't
Mot. to Recons. at 5.)

- 4 -

## DISCUSSION

"Motions to reconsider suppression orders or reopen suppression hearings rest with the sound discretion of the Court." <u>United States v. Dubose</u>, Criminal Action No. 05-372, 2006 WL 1876999, at *5 (D.D.C. July 5, 2006). Where a new submission suggests that suppressed evidence was lawfully obtained and casts doubt upon the suppression ruling, reconsideration might be appropriate. <u>See</u> <u>United States v. Watson</u>, 391 F. Supp. 2d 89, 93-94 n.2 (D.D.C. 2005). In seeking to reopen the record, the government must "provide a reasonable explanation for its failure to present its proffered evidence initially at the first suppression hearing." <u>Id.</u>, 391 F. Supp. 2d at 94 n.3 (citing <u>United States v. Kithcart</u>, 218 F.3d 213, 219-20 (3d Cir. 2000); <u>McRae v. United States</u>, 420 F.3d 1283, 1289 (D.C. Cir. 1969).[4]

A key deficit in the probable cause package at the suppression hearing was proof of the identity of the stolen car occupants. Pinckney was described as dressed differently from

---

[4]     The government explains its failure to present the transcript of Wymbs' testimony by saying essentially that it chose not to, but should have, and it was a human error that should be excused. Whether that explanation passes legal muster need not be decided given the dispositive findings discussed below.

how the person in the driver's seat of the stolen car was
dressed.  Wymbs had not seen the occupants leave the car.  He had
not seen anyone cross the street from the car to where Pinckney
was stopped.  Wymbs had not seen where Pinckney had emerged from
and nothing dispelled the equal likelihood that the relatively
dry Pinckney had just emerged from a residence.  Pinckney neither
fled nor behaved furtively, and no other connection was
established between Pinckney and the stolen car.

The most salient facts affecting identity that the Wymbs
transcript adds are Wymbs' testimony -- 10 days after the arrest
-- that the hoodie on the car occupant was gray, that Pinckney
wore a gray hoodie under his dark jacket, and that Wymbs believed
then, at the time of the preliminary hearing, that Pinckney was
the one he saw in the stolen car.  If Wymbs, upon sober and
contemporaneous reflection on the day of the arrest concluded
that the paucity of evidence undermined confidence in the
identity of Pinckney as an occupant of the stolen car enough to
cause Wymbs to drop the UUV charge, then I accord that judgment
greater weight than any testimony 10 days later that suggests he
found Pinckney and the driver's seat occupant to be one and the
same.  Neither the transcript of Wymbs' testimony nor the
evidence offered at the suppression hearing established any

- 6 -

details describing the height, weight, build, age, complexion, facial hair, hair style, hair color, eye color or other common descriptors about either set of suspects.  Because the factual record is certainly too bare for me to find probable cause to believe there was that identity, re-opening the suppression hearing record to admit the Wymbs transcript would have no impact on my finding that probable cause for an arrest was absent.

Absent probable cause justifying the arrest and a search incident to it, another theory must serve as the basis for Pinckney's detention and the recovery of the evidence.  The government correctly argues, as I suggested at the hearing, that Wymbs possessed reasonable suspicion to justify a Terry stop. Indeed, under Terry, 392 U.S. at 30 and its progeny, "the Fourth Amendment allows a properly limited 'search' or 'seizure' on facts that do not constitute probable cause to arrest or to search for contraband or evidence of crime." United States v. Brignoni-Ponce, 422 U.S. 873, 881 (1975).  However, a Terry frisk is not automatically authorized whenever a Terry stop is.  A Terry frisk is authorized only "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range *is armed and presumably dangerous* to the officer or to others . . . ." Terry, 392 U.S. at 24

- 7 -

(emphasis added); see United States v. Spinner, Criminal Action
No. 05-3160, 2007 WL 92701, at *2 (D.C. Cir. 2007) ("[U]nder
Terry 'a police officer may perform a protective frisk if he has
reason to believe, based on "specific and articulable facts . . .
taken together with rational inferences from those facts," that
"he is dealing with an armed and dangerous individual."'"
(quoting United States v. Holmes, 385 F.3d 786, 789 (D.C. Cir.
2004) (quoting Terry, 392 U.S. at 21, 27))).

Nothing in the record of the suppression hearing or Wymbs'
transcript reflects specific and articulable facts that would
justify a reasonable belief that Pinckney was armed and
dangerous.  Neither officer saw Pinckney display any weapon,
engage in any narcotics transaction or other particularly
dangerous behavior, or make any furtive gesture that might
indicate the presence of a handgun.  Cf. United States v. Smart,
98 F.3d 1379, 1385 (D.C. Cir. 1996) (holding that a frisk for a
weapon was justified where police officer had just witnessed a
narcotics transaction); United States v. Price, 409 F.3d 436, 442
(D.C. Cir. 2005) (finding as factors justifying a fear that
defendant was armed and dangerous a reliable informant's tip that
the driver of the vehicle was transporting a stash of illicit
drugs, and the fact that after agents commanded a car's occupants

- 8 -

to place their hands outside of the windows, the defendant reached back inside the car toward his waistband).  Neither officer said that before Pinckney was searched, the officer *saw* any bulge from Pinckney's clothing resembling a weapon.  Indeed, Hopper admitted that after he began his pat-down, he could not readily identify what the bulge that he *felt* might be, and in any event, could not recognize it as a weapon.  The government cites to traffic stop cases[5] suggesting the circumstances under which a frisk may be lawful, including when officers observed a suspect remove something from his waistband, put it under the car seat, and appear frightened, and where officers saw a suspect shove something down the front of his pants and cover the area with both hands.  (See Gov't Mot. to Recons. 12-13.)  None of those factors is present here.  Thus, no frisk or search of Pinckney was authorized and the fruits of that intrusion were properly suppressed.[6]

---

[5]    The cases were decided by our local District of Columbia Court of Appeals.


[6]    The government attempts to justify the intrusion by arguing that had Wymbs frisked Pinckney upon making the Terry stop, he would have been privileged to do so since such a frisk would have been in keeping with routine police procedures. (Gov't Mot. to Recons. at 6-7.)  The record is silent on whether such a questionable Terry procedure is routine within the MPD. Nevertheless, the government has cited to no authority, and I am aware of none, that if police establish as a routine procedure a frisk of every Terry detainee, Terry's prerequisite to a

- 9 -

CONCLUSION AND ORDER

The transcript the government seeks to introduce, together with the suppression hearing record, confirm that there was no probable cause to arrest Pinckney, and there was reasonable suspicion for only a Terry stop but not for a protective frisk or full search.  Therefore, it is hereby

ORDERED that government's motion [39] to reconsider defendant's motion to suppress evidence be, and hereby is, DENIED.

SIGNED this 21st day of January, 2007.

RICHARD W. ROBERTS
United States District Judge

---

constitutionally permissible frisk -- specific and articulable facts reasonably demonstrating that the detainee is armed and dangerous -- need not be met.